AG:AH

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M-10-780

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

NISHKO KIMESHA JENKINS,

        Defendant.

AFFIDAVIT IN SUPPORT
OF ARREST WARRANT

(T. 21, U.S.C., §§ 963
and 952(a))

- - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

      JEFFREY BOLETTIERI, being duly sworn, deposes and says that he is a Task Force Officer assigned to the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

      Upon information and belief, on or about January 23, 2010, within the Eastern District of New York and elsewhere, the defendant NISHKO KIMESHA JENKINS did knowingly and intentionally conspire to import a controlled substance into the United States from a place outside thereof, which offense involved 500 grams or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21 U.S.C. § 952(a).

      (Title 21, United States Code, Section 963).

      The source of your deponent's information and the grounds for his belief are as follows:[1/]

---

[1/] Because the only purpose of this affidavit is to establish probable cause to arrest, I have not set forth a description of

2

1.  I have been a Deputy Sheriff Investigator with the Suffolk County Sheriff's Office for approximately sixteen years and for approximately five years, have been cross-designated as a Task Force Officer with the Drug Enforcement Administration ("DEA") on Long Island. In this position, I am tasked with investigating narcotics trafficking, money laundering and other offenses. During my tenure with the DEA, I have participated in numerous narcotics investigations during the course of which I have: (a) conducted physical and wire surveillance; (b) executed search warrants at locations where drugs, drug proceeds and records of narcotics and money laundering transactions have been found; (c) reviewed and analyzed numerous taped conversations and records of drug traffickers and money launderers; (d) debriefed cooperating drug traffickers and money launderers; (e) monitored wiretapped conversations of drug traffickers and reviewed line sheets prepared by wiretap monitors; and (f) conducted surveillance of individuals engaged in drug trafficking and money laundering. Through my training, education and experience, I have become familiar with: (a) the manner in which illegal drugs are imported and distributed; (b) the method of payment for such drugs; and (c) the efforts of persons involved in such activity to avoid detection by law enforcement, including money laundering.

---

all the facts and circumstances of which I am aware.

2. On January 23, 2010, Dutch Customs personnel at the Hato International Airport ("Hato") in Curaçao conducted a search of suitcases ("Suitcases") in the possession of NISHKO KIMISHA JENKINS and a co-conspirator ("CC-1") after a drug-sniffing dog alerted to those Suitcases.

3. A search of the Suitcases revealed a black-colored bag within each Suitcase that contained a hidden compartment. A probe of the hidden compartments revealed secreted within approximately 3,985 grams of cocaine. JENKINS and CC-1 were arrested by Curacao police.

4. A review of JENKINS's flight itinerary revealed that JENKINS was scheduled to travel to John F. Kennedy International Airport ("JFK") in New York via Montego Bay, Jamaica.

5. A review of JENKINS' cellular telephone at the time of her arrest revealed recent communications with a co-conspirator ("CC-2") who was arrested on July 8, 2010 in Queens, New York pursuant to a warrant issued by this district for conspiracy to distribute and to possess with intent to distribute cocaine in violation of Title 21 U.S.C. § 841(a)(1).

6. Since November 2009, I, along with agents of the DEA and Internal Revenue Service ("IRS"), have been involved in the investigation of a cocaine distribution conspiracy involving CC-2 and others. The investigation has revealed that CC-2 is a

principal of a drug trafficking organization ("DTO") involved in importing and distributing kilogram quantities of cocaine into the United States through the use of couriers. The DTO uses female couriers to transport cash to Jamaica or Curaçao by plane to pay for cocaine. The purchased cocaine is then compressed and sewn into the couriers' luggage. The couriers then travel with the cocaine in their luggage from Jamaica or Curaçao back to New York by plane. Upon information and belief, JENKINS was one of the couriers used by the DTO.

   6. On April 14, 2010, pursuant to a request made to authorities of the Netherlands Antilles under a Mutual Legal Assistance Treaty ("MLAT"), I, along with another agent, interviewed JENKINS in Curaçao. After being advised of her rights under U.S. law against self-incrimination, JENKINS agreed to speak with agents. JENKINS stated, in sum and substance, that she met with CC-2 in Jamaica and agreed to act as a courier. According to JENKINS, CC-2 provided her with funds to purchase plane tickets for herself and CC-1 and also provided her with additional money to deliver to a source of supply in Curacao.

   WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for defendant NISHKO KIMESHA JENKINS so that she may be dealt with according to law.

   Based on the nature of this application, I respectfully request that this affidavit and the accompanying arrest warrant

be issued under seal until further order of this Court to prevent the destruction and/or concealment of evidence and/or the flight of the target.

JEFFREY BOLETTIERI
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
9th day of

GE
YORK